UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA SUE MULLINS,                    Case No. 09-13410

                 Plaintiff,             Arthur J. Tarnow
vs.                                     United States District Judge

COMMISSIONER OF                         Michael Hluchaniuk
SOCIAL SECURITY,                        United States Magistrate Judge

                 Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 20)

## I.    PROCEDURAL HISTORY

        A.    <u>Proceedings in this Court</u>

        On August 28, 2009, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J.

Tarnow referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 3).  This matter is currently before the Court on

cross-motions for summary judgment.  (Dkt. 17, 20).

        B.    <u>Administrative Proceedings</u>

        Plaintiff filed the instant claims on December 30, 2005, alleging that she

became unable to work on August 31, 2004. (Dkt. 12, Tr. at 71). The claim was initially disapproved by the Commissioner on April 7, 2006. (Dkt. 12, Tr. at 66-70). Plaintiff requested a hearing and on September 18, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Bennett S. Engelman, who considered the case *de novo*. In a decision by the ALJ dated October 2, 2008, the ALJ found that plaintiff was not disabled. (Dkt. 12, Tr. at 43-51). Plaintiff requested a review of this decision on October 30, 2008. (Dkt. 12, Tr. at 39). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 1, Dkt. 12, Tr. at 224-239), the Appeals Council, on June 8, 2009, denied plaintiff's request for review. (Dkt. 12, Tr. at 3-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further review and investigation consistent with this report and recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Dkt. 12, Tr. at 71). Plaintiff's relevant work history included several years as an administrative assistant. (Dkt. 12, Tr. 50). In denying plaintiff's claims, defendant Commissioner considered degenerative disc disease of the cervical and lumbar spine and fibromyalgia as possible bases of disability. (Dkt. 12, Tr. 47).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since August 31, 2004 through her date last insured of December 31, 2007. (Dkt. 12, Tr. at 47). At step two, the ALJ found that plaintiff's degenerative disk disease of the cervical and lumbar spine was "severe" within the meaning of the second sequential step, but found that the diagnoses of fibromyalgia and traumatic fibromyalgia were not supported by the record. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 12, Tr. at 49). At step four, the ALJ found that plaintiff could perform her past relevant work as an administrative assistant. (Dkt.

12, Tr. at 50).

B.    Plaintiff's Claims of Error

Plaintiff asserts that the ALJ improperly failed to give any weight to the opinions of plaintiff's treating physicians, Dr. Fram and Dr. Cho and gave far too much weight to the opinions of psychiatrists, who are not qualified to offer opinions regarding fibromyalgia.  Plaintiff also asserts that the ALJ failed to properly account for discrediting plaintiff's testimony regarding her limitations and impairments.  Plaintiff argues that the ALJ improperly rejected her long-standing diagnosis of fibromyalgia.

C.    Defendant's Cross-Motion for Summary Judgment

According to the Commissioner, plaintiff's treating physicians did not explain any basis for plaintiff's fibromyalgia diagnosis and that such a diagnosis does not automatically entitle plaintiff to disability benefits.  The Commissioner urges the Court to conclude that the ALJ's determination is supported by substantial evidence because plaintiff's medical's records do not describe any "focal point tenderness and other evidence required for a diagnosis of fibromyalgia."  The Commissioner also argues that the ALJ properly gave less weight to Dr. Cho and Dr. Backus because their opinions were not supported by "medical signs and laboratory findings."  According to the Commissioner, neither physician described any functional limitations that would prevent plaintiff from

Report and Recommendation
Cross-Motions for Summary Judgment
*Mullins v. Comm'r*; Case No. 09-13410

performing sedentary work. The Commissioner argues that the ALJ properly gave little weight to Dr. Fram's opinions because he treated plaintiff only briefly during the relevant period and the "extreme limitations" he imposed on her were written after her insured status expired. The Commissioner also argues that the ALJ properly gave significant weight to Dr. Henein's opinions because he was a rheumatologist and he "conducted a thorough examination of Plaintiff and review of her medical history." Under these circumstances, according to the Commissioner, it was reasonable for the ALJ to find that plaintiff did not have fibromyalgia.

In assessing plaintiff's functional capacity, the ALJ expressly found her subjective allegations of incapacitating symptoms and limitations not fully credible. In reaching this conclusion, the Commissioner asserts that the ALJ expressly considered appropriate factors including the objective medical evidence, plaintiff's conservative treatment, her medications, medical opinion evidence, and inconsistencies in her statements over time.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in

substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without further
analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.     Treating Physician Evidence and Plaintiff's Diagnosis of
       Fibromyalgia

Plaintiff argues that the ALJ erred by concluding that plaintiff does not, in

fact, have fibromyalgia.  The Commissioner argues that this conclusion is

supported by the substantial evidence in the record based primarily on several

notes from plaintiff's treating physicians that she has a "history" of fibromyalgia

and the lack of a confirming examination by any treating physician documenting

that plaintiff has a sufficient number of "tender points." The Court of Appeals for

the Sixth Circuit has recognized the difficulty that fibromyalgia presents for

disability determination:

> In stark contrast to the unremitting pain of which
> [fibromyalgia] patients complain, physical examinations
> will usually yield normal results-a full range of motion,
> no joint swelling, as well as normal muscle strength and
> neurological reactions. There are no objective tests which
> can conclusively confirm the disease; rather it is a
> process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness
> which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir.1988).

"*As it is difficult to pin down objective medical evidence to support a diagnosis of*

*fibromyalgia*, it is even more difficult to produce objective medical evidence that

shows the degree to which fibromyalgia limits the functioning of its victim."

*Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) (emphasis added). As

the medical literature and case law recognize, a finding of sufficient "tender

points," is not, however, the Holy Grail of fibromyalgia diagnostic techniques:

> According to a recent Merck Manual entry, fibromyalgia
> is "a common nonarticular disorder of unknown cause
> characterized by generalized aching (sometimes severe),
> widespread tenderness of muscles, areas around tendon
> insertions, and adjacent soft tissues, as well as muscle
> stiffness, fatigue and poor sleep." A diagnosis is based on
> clinical findings of generalized pain and tenderness,
> especially if disproportionate to physical findings;
> negative laboratory results despite widespread symptoms;

and fatigue as a predominant symptom. Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated. Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, *but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18). Patients with only some of the specified features may still have fibromyalgia."*

*Lawson v. Astrue*, 695 F.Supp.2d 729, 735 (S.D. Ohio 2010), quoting, Merck Manual Online Medical Library, http://www.merck.com (emphasis added). The Sixth Circuit and the Social Security Administration have also recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and the treatment of fibromyalgia. *See e.g.*, *Rogers v. Comm'r*, 486 F.3d 234, 243-44 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ..."); *Preston v. Sec'y of Health & Human Serv.*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity); 64 FR 32410, 32411 (June 17, 1999) ("Fibromyalgia is a 'nonarticular' rheumatic disease, and objective impairment of musculoskeletal function, including limitation of motion of the joints, is not present, in contrast to the usual findings in 'articular' rheumatic

diseases. Joint examinations in fibromyalgia are necessary only to exclude other rheumatic diseases because physical signs other than tender points at specific locations are lacking. The pain of fibromyalgia is not joint pain, but a deep aching, or sometimes burning pain, primarily in muscles, but sometimes in fascia, ligaments, areas of tendon insertions, and other areas of connective tissue. The evaluation criteria require that the pain be widespread, and that the symptoms be assessed based on whether they are constant or episodic, or require continuous medication, but they are not based on evaluations of individual joints or other specific parts of the musculoskeletal system.") (internal citations omitted).

In this case, the ALJ concluded that the diagnoses of fibromyalgia and traumatic fibromyalgia were not supported by the medical evidence record. The ALJ pointed to a treatment note of April 15, 2004, in which James Cho, DO, refers to the diagnosis of fibromyalgia but stated that "he does not note how he reached that conclusion or the location or number of so called trigger points." (Tr. 47). The ALJ next relied on a September 15, 2004 office visit, in which plaintiff complained of pain resulting from an accident that occurred during "a bike ride to the East Coast," while she rode on the back of a motorcycle. The ALJ found it particularly significant that her xrays were "*unremarkable* for any occult fracture, except there is some *mild* early degenerative changes involving the cervical spine." (Tr. 48) (emphasis in original). The ALJ also referred to a November 30, 2004

office note from Eric N. Backos, MD, a referral from Dr. Cho for MRI studies. Dr.

Backos notes on February 8,2005: "I reviewed the MRI films. Although there is

some disc bulging, I did not see any frank herniations." (Tr. 48). As noted above,

none of these objective test results have any bearing on plaintiff's fibromyalgia

diagnosis and they were improperly relied on by the ALJ in making his

determination that plaintiff did not suffer from fibromyalgia.

She was referred by Dr. Bradley of Dr. Backos' office to a rheumatologist,

Violette F. Henein, MD, and was evaluated on February 22, 2007. The ALJ found

most persuasive Dr. Henein's note that plaintiff's pain was likely the result of

depression: "I had a long discussion with the patient. I told her that her chronic

pain is probably due to depression, and she needs to have her depression under

control." (Tr. 48). The ALJ then states that plaintiff took one antidepressant, it

caused side effects and she has not other psychiatric treatment.[2] The ALJ also

relies on the consultative examination of Carrie Neubecker, Psy.D., and Matthew

Dickson, Ph.D. on February 21, 2006, in which they found no psychological

impairment.

In August 2007, the ALJ notes that plaintiff sought treatment from another

doctor, Dr. Fram, a neurologist, who found bilateral SI radiculopathy. He also

---

[2] The record shows that plaintiff tried Zoloft and Cymbalta, which both
caused confusion and sedation. (Tr. 8).

Report and Recommendation
Cross-Motions for Summary Judgment
*Mullins v. Comm'r*; Case No. 09-13410

stated: "probable fibromyalgia."  Dr. Fram completed a "Residual Physical

Functional Capacity Assessment" form on August 8, 2008 and set forth significant

limitations for plaintiff.  According to the ALJ, while the rest of the medical

record shows some spinal degenerative disc disease, no other doctor has given such

"extreme limitations" as Dr. Fram.  The ALJ found Dr. Fram's assessment of that

plaintiff "avoid all exposure" to environmental limitations to be so extreme that

plaintiff "would have to live in a sterile bubble."  His opinion about plaintiff's

physical limitations were rejected by the ALJ as inconsistent with the rest of the

medical opinions in the record.  The ALJ concluded that, while plaintiff did have

some pain and limitations but only to the extent that she can perform the full range

of sedentary work with the ability to sit and stand on occasion during a normal

work day.

It is true, as noted by the ALJ, that post-insured status evidence of a

claimant's condition is generally not relevant.  *Bagby v. Harris*, 650 F.2d 836 (6th

Cir. 1981); *see also Bogle v. Sec'y of Health and Hum. Serv.*, 998 F.2d 342 (6th

Cir. 1993).  However, such evidence will be considered if it establishes that an

impairment existed continuously and in the same degree from the date the insured

status expired.  *Johnson v. Sec'y of Health and Hum. Serv.*, 679 F.2d 605 (6th Cir.

1982).  Given that Dr. Fram began treating plaintiff in 2007, before the expiration

of her insured status, the ALJ should have considered whether and to what extent

the limitations found by Dr. Fram existed before the expiration of plaintiff's

insured status and, whether and to what extent they were consistent with the

opinions of Dr. Cho and Dr. Backus, both of whom treated plaintiff long-term

during the relevant period.

In this vein, when evaluating the opinions of treating physicians, the ALJ

must also consider, under some circumstances, contacting the treating source for

clarification:

> Because treating source evidence (including opinion
> evidence) is important, if the evidence does not support a
> treating source's opinion on any issue reserved to the
> Commissioner and the adjudicator cannot ascertain the
> basis of the opinion from the case record, the adjudicator
> must make "every reasonable effort" to recontact the
> source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1512(e); *Sims v. Apfel*,

530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and

develop the arguments both for and against granting benefits.).  To the extent the

ALJ viewed Dr. Fram's opinions as inconsistent the remainder of the record

evidence or found his opinions to be "extreme," the ALJ should have at least

considered contacting to Dr. Fram for clarification.  In addition, if the ALJ

determined that the basis for Dr. Cho's and Dr. Backus' opinion that plaintiff had

fibromyalgia was unclear, the ALJ should have contacted them to clarify,

particularly given that they were long-term treating physicians of plaintiff.  Based

on the foregoing, the undersigned suggests that the ALJ did not give sufficiently good reasons for discrediting the treating physician evidence.

The undersigned also concludes that the ALJ impermissibly substituted his own judgment for those of all the physicians who concluded that plaintiff does, in fact, have fibromyalgia. An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). Not a single physician, including Dr. Henein and the consulting physicians, ever concluded that plaintiff was *not* suffering from fibromyalgia or that she was misdiagnosed. Notably, while Dr. Henein concluded that plaintiff's chronic pain was likely to be related to untreated depression, she also noted that plaintiff was "already on the right medications for her fibromyalgia." (Tr. 127). At the time of Dr. Henein's examination, plaintiff was taking Lyrica (a fibromyalgia medication), Robaxin (a muscle relaxant), Ultram (a opioid pain medication used to treat moderate to moderately severe chronic pain), and Vicodin (a pain medication used to treat moderate to severe pain).

18

Report and Recommendation
Cross-Motions for Summary Judgment
*Mullins v. Comm'r*; Case No. 09-13410

Interestingly, nothing in Dr. Henein's report indicates that she, an expert rheumatologist according to the ALJ, conducted the "18 tender point" examination that the ALJ found so significantly lacking in the records of plaintiff's treating physicians.

More importantly, the Commissioner appears to argue that, over the course of several years, all of plaintiff's treating physicians merely "assumed" that she suffered from fibromyalgia based on "history" from the plaintiff herself. However, plaintiff's physicians actually *treated* her for fibromyalgia. It seems much more likely that these various medical professionals made judgments, based on their medical expertise and actual examinations of plaintiff, that she suffered from fibromyalgia and that treatment of this condition was warranted and medically appropriate. Based on the foregoing, the undersigned concludes that the ALJ's determination that plaintiff did not have fibromyalgia is unsupported by substantial evidence and constitutes a impermissible substitution of the ALJ's judgment for those of the medical professionals who diagnosed and treated plaintiff over the course of several years.

D.    RFC and Credibility

The ALJ concluded that plaintiff had the residual functional capacity to perform the full range of sedentary work and thus, was not disabled. Plaintiff testified at the hearing that she left her employment as an administrative assistant

in 2002 because of the pain of fibromyalgia. However, the ALJ noted that she

healthy enough in 2004 to travel from Michigan "to the East Coast" on the back of

a motorcycle and back even after an accident. The ALJ found that plaintiff's

medically determinable impairments could reasonably be expected to produce the

alleged symptoms, however, her statements concerning the intensity, persistence

and limiting effects of these symptoms were not credible to the extent they are

inconsistent with the residual functional capacity assessment. In terms of

plaintiff's alleged pain she is only partially credible, giving her very benefit of

doubt she does suffer from some pain as the result of degenerative disc disease.

The ALJ concluded that plaintiff had rejected treatment for any depression and

therefore there is no finding of limitations as the result of any mental illness. The

ALJ found the opinion evidence from Dr. Henein to be the most persuasive. Dr.

Henein concluded that depression was primary source of plaintiff's pain. The ALJ

rejected Dr. Fram's 2008 opinion for its "extreme conclusions," because he only

treated the claimant for a short period of time, and because the examination

occurred after plaintiff's insured status had expired.

The ALJ, in commenting on plaintiff's credibility as it relates to pain

symptoms, must follow the requirements of, among other provisions, 20 C.F.R.

§ 404.1529 as well as SSR 96-7p, which provides, in part:

In recognition of the fact that an individual's symptoms

can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ did not even question plaintiff about many of these factors and certainly did not explain why he did not take them into account in assessing plaintiff's credibility and impairments. Thus, given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence and consultative opinions without

Report and Recommendation
Cross-Motions for Summary Judgment
*Mullins v. Comm'r*; Case No. 09-13410

evaluating plaintiff's pain and other credibility issues, the undersigned concludes that plaintiff's credibility must be re-assessed as well.

Indeed, the ALJ's unsupported decision regarding plaintiff's diagnosis completely undercuts his credibility findings and related RFC findings. The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, however, much of the ALJ's credibility determinations were based on his improper rejection of plaintiff's diagnosis of fibromyalgia. "[B]ecause

of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance." *Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010); *see also Rogers*, 486 F.3d at 243 ("[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."). Moreover, the ALJ seemed to substantially discount plaintiff's credibility because of the 2004 motorcycle trip. While plaintiff's physical ability to go on a cross-country motorcycle ride does not enhance her credibility, the ALJ failed to take into consideration the worsening of plaintiff's fibromyalgia after the accident that occurred on this trip (i.e., the addition of "traumatic fibromyalgia" to plaintiff's diagnostic picture) and how her circumstances, condition, and abilities may have changed or worsened during the *three years* that elapsed between that trip and her last date insured. While a diagnosis of fibromyalgia, traumatic or otherwise, does not equate to disability, as set forth above, just as in *Rogers*, the ALJ here failed to address the consistent diagnosis of fibromyalgia in the clinical record and did not apply the standard diagnostic criteria, which does not require "objective" clinical evidence. *See also Hayes v. Comm'r*, 2010 WL 723766, *9 (N.D. Ohio 2010) (The ALJ erred in using objection medical signs such as joint deformity, effusion, range of motion, reflexes, sensation, and muscle strength to determining whether a

claimant's subjective assertions regarding pain were credible.).

Based on the foregoing, the undersigned concludes that the ALJ failed to fully consider the nature and extent of plaintiff's limitations. Given this recommendation, the undersigned also concludes that the ALJ must reassess his credibility determinations. As set forth in SSR 96-5p, a "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* Based on these judgments, the undersigned cannot conclude that the ALJ's credibility determination is grounded in substantial evidence. While this record may not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[3] a remand is nonetheless required.

E.    Conclusion

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not within that "zone of choice within which decisionmakers may go either way

---

[3] "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is not supported by substantial evidence, justifying a remand and investigation consistent with this Report and Recommendation.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further review and investigation consistent with this report and recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 27, 2010

s/Michael Hluchaniuk_____
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 27, 2010 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Ronald M. Bahrie, Theresa Urbanic, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov